## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 29 2017, 10:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Derick W. Steele
Deputy Public Defender
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Danny D. Pigram, *Appellant-Defendant*, | November 29, 2017 |
| v. | Court of Appeals Case No. 34A02-1706-CR-1454 |
| | Appeal from the Howard Superior Court |
| State of Indiana, *Appellee-Plaintiff*. | The Honorable William C. Menges, Jr., Judge |
| | Trial Court Cause No. 34D01-1609-F3-1018 |

**Brown, Judge.**

[1] Danny D. Pigram appeals his sentence for dealing in a narcotic drug as a level 4 felony. Pigram raises two issues which we revise and restate as:

I. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender; and

II. Whether the trial court erred in imposing conditions of probation.

We affirm.

## Facts and Procedural History

[2] At some point, a confidential informant made phone contact with Pigram and inquired about purchasing $200 worth of heroin. Pigram advised the informant that they could meet at Pigram's residence in Kokomo, Indiana. On August 1, 2016, he knowingly or intentionally delivered heroin with a weight of at least one gram but less than five grams to a confidential informant in exchange for $200.

[3] On September 30, 2016, the State charged Pigram with two counts of dealing in a narcotic drug as level 4 felonies, one count of dealing in a narcotic drug as a level 3 felony, and two counts of dealing in cocaine as level 4 felonies. On April 28, 2017, Pigram pled guilty to one count of dealing in a narcotic drug as a level 4 felony, the State agreed to dismiss the remaining charges, and the court accepted Pigram's guilty plea.[1]

---

[1] The court asked if the State had made any promises in exchange for that plea, and the prosecutor stated: "We (inaudible) right now. However, I would be willing to (inaudible)." Transcript Volume II at 19. The

[4] On June 6, 2017, the court held a sentencing hearing. Pigram indicated that he has struggled with cognitive problems during his lifetime which caused mental illness in part as the result of an accident, and that he suffered a traumatic brain injury in 1992 when he was hit by a car. He indicated that he did not think he had a criminal attitude or had some sort of license to be able to violate the criminal law. He stated that he was using heroin and substances at the time of the offense because of his mental illness and his physical problem and that he is in pain all the time. He also indicated that he had altercations or incidents in jail resulting in punishment. Pigram's counsel asked him, "And is that something that you seem to have much control over or not?" Transcript Volume II at 29. Pigram answered, "No, I don't." *Id.* He also testified that he tried to better himself in jail and completed the Mothers Against Methamphetamine Power Over Addiction Program. The probation officer completing the presentence investigation report ("PSI") recommended a sentence of twelve years with two years suspended.

[5] The court stated Pigram's "plea of guilty is a mitigating factor, but, in exchange for the plea of guilty, four very serious charges were dismissed, all being Level 3 or 4 felonies. So I think that mitigating factor is deserving of only minimal weight." *Id.* at 37. It found his health and mental health issues as mitigators. The court observed that the PSI listed numerous instances of incidents at the

---

court later asked Pigram: "Have you or anyone else received any promises, besides the State's offer to dismiss Counts II through V, or been given anything of value to get you to enter the plea of guilty you're offering today?" *Id.* at 21. Pigram answered: "No, sir." *Id.*

jail involving sanctions and stated "so obviously his behavior while incarcerated pending trial was inappropriate." *Id.* It found Pigram's criminal history to be a significant aggravating factor and that the aggravating factors substantially outweighed the mitigating factors.

The court sentenced Pigram to the Department of Correction for twelve years with ten years executed and two years suspended to supervised probation. The sentencing order provides in part: "As specific conditions of probation, [Pigram] is ordered to follow any and all recommendations made by the Probation Department including, but not limited to, treatment and education." Appellant's Appendix Volume II at 61.

## *Discussion*

### I.

The first issue is whether Pigram's sentence is inappropriate in light of the nature of the offense and his character. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

Pigram argues that, "while drug use in the community is a major issue in modern society, there was not a victim in the traditional sense to the crime charged." Appellant's Brief at 7. With respect to the character of the offender,

Pigram acknowledges that his criminal history is "not ideal," but asserts that the broader review of his character reveals a unique offender in terms of his mental and physical health. *Id.* The State maintains that Pigram's sentence is not inappropriate.

[9] Our review of the nature of the offense reveals that Pigram knowingly or intentionally delivered heroin to a confidential informant in exchange for $200, with the drug having a weight of at least one gram but less than five grams.

[10] Our review of the character of the offender reveals that Pigram, who was born on September 25, 1972, pled guilty to one count of dealing in a narcotic drug as a level 4 felony and that the charges of dealing in a narcotic drug as a level 4 felony, dealing in a narcotic drug as a level 3 felony, and two counts of dealing in cocaine as level 4 felonies were dismissed. The PSI indicates that Pigram described his physical health as fair, that he was hit by a car in 1992 and suffered a traumatic brain injury, that he experiences weakness in his left side, and that he has back issues, headaches, asthma, borderline diabetes, high blood pressure, heart issues, and missing fingers due to being robbed. He reported suffering from mental health issues as a result of the traumatic brain injury and received mental health services in Wisconsin and Illinois. He also reported using marijuana, Ecstasy, cocaine, heroin, and Oxycontin.

[11] Pigram was charged with multiple offenses in Illinois for which the PSI lists the disposition as unknown. Specifically, he was charged with simple battery in 1991; criminal trespass to State SUP Land, assault, and aggravated assault in

1992; disorderly conduct in 1993; assault and aggravated battery with great bodily harm in 1994; and battery and two counts of criminal trespass to vehicles in 1995.

[12] He has multiple convictions in Wisconsin including disorderly conduct as a class B misdemeanor in 1995; Forgery-Uttering as a class C felony, criminal damage to property as a misdemeanor, and disorderly conduct as a class B misdemeanor in 1997; two counts of battery as misdemeanors in 1998; resisting or obstructing an officer, receiving stolen property as a class A misdemeanor, and two counts of retail theft as class A misdemeanors in 2002; possession of narcotic drugs as a felony, two counts of retail theft as class A misdemeanors, escape as a felony, and Unlawful Phone Use-Threatens Harm as a class B misdemeanor in 2004; retail theft as a class A misdemeanor, Forgery-Uttering as a felony, three counts of theft as class A misdemeanors, criminal damage to property as a class A misdemeanor, and bail jumping as a class A misdemeanor in 2006; two counts of battery by prisoners as felonies in 2007; possession of cocaine as a misdemeanor in 2010; and resisting or obstructing officer as a class A misdemeanor, possession of a narcotic drug as a felony, and two counts of disorderly conduct as class B misdemeanors in 2012. The PSI also reveals that multiple charges in Wisconsin were dismissed. Most recently, Pigram was charged with manufacturing/delivering heroin and possession of narcotic drugs as felonies and possession of drug paraphernalia as a misdemeanor in 2016 in Wisconsin, but these charges were dismissed.

[13] In Indiana, under another cause number, Pigram was sentenced for possession of paraphernalia as a class C misdemeanor in 2017. He was also sentenced for two counts of conversion as class A misdemeanors in 2017 under another cause number, and a charge of conversion was dismissed under a separate cause number. The PSI summarized the convictions as five adult felony and twenty-six adult misdemeanor convictions. The PSI states that Pigram's overall risk assessment score using the Indiana Risk Assessment System places him in the high risk to reoffend category.

[14] After due consideration, we conclude that Pigram has not sustained his burden of establishing that his sentence of twelve years with two years suspended is inappropriate in light of the nature of the offense and his character.

## II.

[15] The next issue is whether the trial court erred in imposing conditions of probation. Pigram argues that the probation condition that he follow any and all recommendations made by the probation department is unconstitutional because it does not notify him what behaviors are prohibited and impermissibly permits the probation department to administer the conditions of probation. The State asserts that this issue is not ripe as Pigram has not yet been released to probation and his probation has not been revoked. We agree.

[16] The record does not reveal that there has been any petition or proceeding to revoke Pigram's probation. Consequently, we conclude that this issue is not ripe for review. *See Madden v. State*, 25 N.E.3d 791, 797-798 (Ind. Ct. App.

2015) ("If Madden is . . . referring to any future finding by the Community Corrections program that he violated his probation, this question is not yet ripe for review as Madden has not yet been found to be in violation of any terms of his probation."), *trans. denied*; *Kimbrough v. State*, 911 N.E.2d 621, 638 (Ind. Ct. App. 2009) (holding that a claim would become ripe for adjudication only if the trial court rescinded the suspension of an order that the defendant pay a $5,000 fine and the defendant was imprisoned for failing to pay the fine); *Gustman v. State*, 660 N.E.2d 353, 356 (Ind. Ct. App. 1996) (concluding that the defendant's argument that the trial court violated his constitutional rights by ordering that he pay child support as a condition of probation immediately upon his release from incarceration was not ripe for appellate review), *reh'g denied*, *trans. denied*.

## *Conclusion*

[17] For the foregoing reasons, we affirm Pigram's sentence.

[18] Affirmed.

Baker, J., concurs.

Riley, J., concurs in result without opinion.